## McCubbins v. McCubbins.

(Decided February 4, 1930.)

ROBERT HUBBARD for appellant.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment denying appellant a divorce. The ground on which the divorce was sought was adultery, and lewd and lascivious conduct. The evidence, which it is claimed was sufficient to authorize a divorce, is as follows:

Mrs. Belle Greenway, who conducted a rooming house in Louisville, testified that appellant and appellee occupied a room in her home for some time. The character of the women that appellee associated with was very bad. On one occasion she went to the room of appellee to clean up, and there was a man friend of hers, with whom she had been keeping company, sitting by her bed, and she ordered the man out of the room. On several occasions she found men in appellee's room while her husband was at work. On numerous occasions she had heard appellee using the phone to call up men, and had heard her make dates with men, telling them when and where to meet her. Everybody acquainted with appellee knew that she was leading an immoral life. She was away from her husband all the time, and would sometimes stay out until late at night. Her other roomers complained of appellee, and she raised the rent on her and her husband to get them out. From what she had seen and heard, she would say that appellee was a woman of bad character. From all appellee's actions, she knew "she was as crooked as a black snake."

Miss Emily Norman, who conducted a beauty parlor, testified as follows: "Yes; the defendant was a customer of mine, and on several occasions she came to my beauty parlor to have work done in the way of having her hair washed and dressed; this was about two years ago, and on several of these occasions she asked permission to use my telephone, which I granted her, and on these occasions, she would ask to talk to some man whose name I did not pay any attention to. I have heard her do that more than once. I have heard her say over the telephone to the man to whom she was talking that, as soon as she got through in my place, which would be in a few minutes, she and her companion would meet him. From what I could gain from her conversation, she was in love

with this man she was talking to, and she was arranging an illicit meeting with him. I don't know the character of the women who came with her, as I did not know them outside of meeting them in my beauty parlor; but they all appeared to be very gay and from hearing the defendant make engagements over the telephone with some man, and saying that she and her companion would meet him, I would naturally infer that they were of the same character."

In addition to this evidence there is in the record the affidavit of appellee, in which she confessed or admitted her illicit relations with other men. The affidavit was made under the following circumstances: On September 8, 1928, and two days before the suit was filed, appellee came to the office of a reputable attorney and notary public, accompanied by her husband. They brought an affidavit already prepared. Not only was the affidavit read to appellee, but she read it herself. She made some corrections in it, and then redrafted the affidavit, after making the corrections. It was then read to her in the presence of her husband and his attorney. The notary public then asked her if the contents of the affidavit she was about to sign were true, and appellee said that they were. She also said that she made the affidavit of her own free will and consent. She then signed and swore to the affidavit in the presence of the notary public.

It is the statutory rule in this state that no petition for divorce can be taken for confessed, or be sustained by the admission of the defendant alone, but must be supported by other proof, and that two witnesses, or one and strong corroborating circumstances, shall be necessary to sustain the charge of adultery or lewdness. Kentucky Statutes, sec. 2119. Doubtless the evidence of Mrs. Greenway and Miss Norman is sufficient corroboration of appellee's affidavit, if the affidavit may be received and considered. However, it must not be overlooked that it has long been the rule in this state that confessions of the wife should be received with caution, and most carefully scrutinized, and when made in the presence of her husband it will be presumed that they were procured by his coercion. Rodgers v. Rodgers, 13 Ky. Law Rep. 203. Whether, in view of the recent emancipation of women, the presumption of coercion still obtains, we need not decide. There still remains the question of collusion.

Though we acquit appellee's attorney and the notary from any culpable participation in the obtention of the affidavit, the circumstances under which the affidavit was made cannot be overlooked, so far as the parties themselves are concerned. The husband and wife came to the office of the notary with the affidavit drawn. After a few corrections by the wife, the affidavit was signed and sworn to in the presence of her husband. Though the record is silent as to inducements offered the wife by the husband, as well as to the character of pressure or influence brought to bear by him, there is no escape from the conclusion that she was approached by him and agreed to accompany him to the notary's office, and to do the unusual thing of making an affidavit certifying to her own infidelity and shame. Therefore the situation is one where the circumstances point unerringly to collusion between the wife and the husband, and we are persuaded that the chancellor did not err in refusing to consider the affidavit.

With the affidavit out of the way, the only question for determination is whether the other evidence was sufficient to authorize a divorce. Though Mrs. Greenway may have sized up the situation correctly with respect to the character of appellee, her evidence to the effect that "everybody acquainted with appellee knew that she was leading an immoral life," that "from what she had seen and heard she would say that appellee was a woman of bad character," and that "from all appellee's actions she knew" "she was as crooked as a black snake," is a mere statement of conclusions without probative effect. The facts to which she testified are that her women associates were of bad character, that she made dates with men and entertained them in her room, and that she would sometimes stay out until late at night. Whether, with proper corroboration, the circumstances thus detailed would be sufficient to justify the inference of adultery or lewdness, we need not determine. The only corroboration is that found in the evidence of Miss Norman. Omitting her conclusions that appellee was in love with the man she was talking to over the phone, and was arranging an illicit meeting with him, the only fact to which she testified was that appellee, when at her beauty parlor, would talk to some man over the phone, and would say that, as soon as she got through there, she and her companion would meet him. The rule is that

the court will not infer guilt, where the facts proved may be reconciled on the assumption of innocence. Following this rule, the mere fact that a woman on the occasion of her visits to a beauty parlor calls up a man and makes an engagement with him will not justify the inference that she was guilty of adultery or lewdness. We are therefore constrained to the opinion that the chancellor did not err in holding that the evidence, other than that contained in the affidavit, was not sufficient to sustain the petition.

Judgment affirmed.